IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ASSET ACCEPTANCE LLC,**

        Plaintiff,

vs.                                                                 Civ. No.  JH

**JORGE DELGADO,**

        Defendant.

**UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEW MEXICO;
LINDA MOTT, Assistant United States Attorney,**

        Respondents.

## MEMORANDUM OPINION AND ORDER OF REMAND

      This matter is before the Court on the Respondents' *Motion to Quash Order Appointing AUSA Mott as State Court Arbitrator* [Doc. 5]. The underlying case between Asset Acceptance LLC and Jorge Delgado is a collections matter that was filed in the State of New Mexico's Second Judicial District Court ("Second Judicial"). In the motion, attorney Linda Mott and her employer, the U.S. Attorney's Office for the District of New Mexico, seek an order quashing Second Judicial's order appointing Mott as an arbitrator of the collections case. On May 26, 2015, the Court held a hearing on the motion. Because the Court concludes that Second Judicial's order conflicts with a validly enacted federal regulation, it will grant the motion and quash the order appointing Mott as arbitrator.

## BACKGROUND

      Second Judicial has a local rule, approved by the New Mexico Supreme Court, providing for court-annexed arbitration in certain civil cases. *See generally* N.M. R. Civ. Pro. LR2-603.

That rule requires that all active members of the New Mexico State Bar who have been licensed for at least five years and who either reside or work in Bernalillo County must be available to serve as arbitrators for civil cases in which less than $25,000 is at stake. LR2-603(II)(A) and (IV)(A). Under the rule, an attorney may be excused from the pool of arbitrators for good cause, or from service in a particular case for conflicts of interest or a showing of good cause. LR2-603(IV)(A) and (IV)(C)(4). Arbitrators are compensated in the amount of $100 per case. LR2-603(IV)(D). The arbitrator must personally conduct the hearings and trial (if one is necessary) and must personally sign decisions and the award. LR2-603(V)(A)(2). The arbitrator must file his award (final decision) within 120 days after the arbitrator is appointed. LR2-603(V)(A)(5). However, upon a motion by the arbitrator or one of the parties, the court may extend that period. *Id*. If the arbitrator fails to file an award within the designated period, "the court after written notice may impose an appropriate sanction including but not limited to requiring the arbitrator or party to pay a penalty into the second judicial district arbitration fund." *Id*. The arbitrator must set hearings during regular business hours except upon agreement of the parties. LR2-603(V)(B)(1). Within ten days after the last hearing, the arbitrator must file his award with the clerk and serve copies on all parties, or face sanctions. LR2-603(V)(D)(3).

In 2013, in accordance with LR2-603, Second Judicial appointed Mott to be an arbitrator in *Moore v. Flynn*, a car accident case. *See* Doc. 5-2. On behalf of Mott, Assistant U.S. Attorney Sasha Siemel petitioned Second Judicial for an excusal of both Mott and all Assistant U.S. Attorneys ("AUSAs") in Albuquerque from the arbitrator pool on the grounds that federal government ethics regulations prohibit them from practicing law other than in their official capacities as AUSAs. Docs. 5-2 and 5-3. The federal regulation at issue, 5 C.F.R. § 3801.106, prohibits "outside employment" that involves "the practice of law, unless it is uncompensated

2

and in the nature of community service, or unless it is on behalf of himself, his parents, spouse, or children." *See* 5 C.F.R. § 3801.106(b)(1)(i). The regulation defines "outside employment" as "any form of employment, business relationship or activity, involving the provision of personal services whether or not for compensation, other than in the discharge of official duties. It includes, but is not limited services as a lawyer . . ." *Id*. at § 3801.106(a). These restrictions may be waived in writing by the Department of Justice if they will cause the federal employee "undue personal or family hardship" or "unduly prohibit an employee from completing a professional obligation entered into prior to Government service." *Id*. at § 3801.106(b)(2).

Siemel presented then Chief Judge Ted Baca with a written opinion from the Executive Office of United States Attorneys' General Counsel's Office. It advised that an AUSA serving as a state court arbitrator would violate the *Standards of Ethical Conduct for Employees of the Executive Branch* pertaining to outside activities. It stated:

> GCO has determined that the outside practice of law as required by the arbitration panel is a prohibited outside practice of law. The court-annexed arbitration program imposes on the arbitrator certain deadlines, requirements and potential requirements which indicate that the AUSA Mott would not be able to guarantee that this activity would not interfere with the performance of her federal duties.

Doc. 5-5. Chief Judge Baca was not persuaded, writing to Siemel that he was "not wholly convinced that any attorney is so busy that they could not find 2-4 hours in a 4 to 6 to 8 month time period to fully complete an arbitration under a schedule that in no way interferes with other duties and obligations." Doc. 5-6. However, Chief Judge Baca excused Mott from arbitrating *Moore v. Flynn* on the grounds that she had no current tort experience and therefore was not in a good position to arbitrate a personal injury case, thereby preventing the matter from going any further. *Id*. However, he explicitly declined to remove the AUSAs generally or Mott specifically from the pool of arbitrators. *Id*. Siemel responded to several points raised in Chief Judge Baca's

3

letter, but then offered to resolve the issue by presenting Baca a list of AUSA's who would *voluntarily* act as arbitrators (subject to certain conditions, such as the AUSAs using annual leave as necessary to perform the arbitration work) in exchange for Baca's excusal of the remaining AUSAs. Doc. 5-7. Apparently, Chief Judge Baca did not accept this offer.

In mid-2014, Second Judicial again appointed Mott to act as an arbitrator, this time in a collections case, *Asset Acceptance v. Delgado*. *See* Doc. 5-8. By this time, Judge Baca had been replaced as Chief Judge by Nan Nash. Siemel again requested that Mott and other AUSAs be excused from service as arbitrators. Chief Judge Nash reached the same conclusion as her predecessor, writing to Siemel: "If Ms. Mott feels that she absolutely cannot accommodate this appointment in her schedule, she may file a motion, within the case, asking to be excused, and setting forth her time constraints and the Court will set an evidentiary hearing on the same." Doc. 5-9. Siemel again offered to resolve the matter by providing Second Judicial with a list of AUSA volunteers. Doc. 5-10. Again, Second Judicial rejected the offer. Chief Judge Nash wrote: "It is my understanding that the New Mexico Supreme Court is the entity that governs licensed New Mexico attorneys. Therefore, as licensed New Mexico attorneys, AUSAs are required to comply with the rules adopted by our New Mexico Supreme Court." Doc. 5-11.

Thereafter, Mott removed the case to this Court under 42 U.S.C. § 1442(a).

## DISCUSSION

### I. PROPRIETY OF REMOVAL

Section 1442(a)(1) of Title 28 authorizes the removal to federal court of a civil action or a criminal prosecution commenced in a state court against persons who are acting in the course of their employment by or on behalf of the United States. It provides: "A civil action or criminal prosecution that is commenced in a State court and that is against or directed to [a federal

officer] may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a)(1). The statute has been applied in cases involving a wide spectrum of civil and criminal substantive contexts, and the right to remove has been invoked by a tremendous variety of federal officers and persons acting under the direction of federal officers. *See* 14C Fed. Prac. & Proc. Juris. § 3726 (4th ed.). Whatever the nature of the proceeding, to be removable under Section 1442 an action must be predicated on acts done under color of the actor's governmental office. It is only when the conduct is under color of the defendant's office that the defendant may have a federal defense, and without such an ostensible defense the action is not removable under Section 1442. *Mesa v. California*, 489 U.S. 121, 139 (1989); *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Section 1442 represents an exception to the well-pleaded complaint rule in the removal context because issues generally thought to be defensive in character, rather than the content of the plaintiff's claim, provide its foundation. See *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("[R]emovals under section 1441 are subject to the well-pleaded complaint rule, while those under section 1442 are not.").

The purpose of Section 1442(a)(1) is to protect federal officials from civil or criminal liability for the performance of their official duties. *Charges of Unprofessional Conduct Against 99-37 v. Stuart*, 249 F.3d 821, 824 (8th Cir. 2001); *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (per curiam). Thus, the federal courts' philosophy generally is to construe Section 1442 broadly in order to effectuate its purpose to protect federal interests. *Pretlow v. Garrison*, 420 Fed. Appx. 798, 800 (10th Cir. 2011) (citing *Durham*, 445 F.3d at 1253); *Nationwide Investors v. Miller*, 793 F.2d 1044, 1045-46 (9th Cir. 1986); *Overman v. United States*, 563 F.2d 1287, 1290-91 (8th Cir. 1977). It permits removal of actions that expose a federal official to civil

5

liability or criminal for past actions, as well as for civil matters that seek to either prohibit or require certain actions by the official in the future. *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989). As the Supreme Court has stated:

> The various acts of Congress constituting the section as it now stands were enacted to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment for violation of state law or obstruction or embarrassment by reason of opposing policy on the part of those exerting or controlling state power. … It scarcely need be said that such measures are to be liberally construed to give full effect to the purposes for which they were enacted. . . .

*Colorado v. Symes*, 286 U.S. 510, 517-518 (1932) (Butler, J.).

The first question before this Court is whether Mott's removal of the case under Section 1442 was proper. There do not appear to be any reported cases in which a federal government attorney removed under Section 1442 to seek protection from a state court order appointing him as an arbitrator. However, as further explained below, precedent in similar cases demonstrates that by raising a colorable federal defense to the appointment order, Mott has done enough to satisfy the requirements of the removal statute. Indeed, it is the presence of a federal defense in the form of 5 C.F.R. § 3801.106 that makes this case removable under § 1442. *See Mesa v. California*, 489 U.S. 121, 139 (1989).

The most similar cases cited by Mott appear to be ones in which a federal officers removed a case to federal court to seek protection from a subpoena issued in state court proceedings requiring the officer to provide information obtained in the course and scope of his employment with the government. According to Second Judicial, those cases were removable because the information being subpoenaed by the state related to the witnesses' federal employment and therefore implicated a federal interest. Second Judicial argues that such cases are not analogous to the facts presented here because Mott's appointment as arbitrator will not

6

interfere with her federal duties or any federal interest. However, this argument overlooks the key requirement of a federal defense. If a federal agent is subpoenaed to testify in his *personal* capacity or to produce personal documents, there is no federal defense (e.g., no federal regulation) to prevent him from doing so. That is not true here, where the case raises a direct conflict between the federal regulation governing the practice of law by AUSAs and a state court order. In all the subpoena cases cited and relied upon by Mott, as well as in this case, the basis for refusing to obey the state court order is a federal regulation governing the manner in which the federal agent performs his professional duties. Here, the federal government employs Mott and the other AUSAs *as lawyers* and has passed a regulation governing and limiting other work that they may do *as lawyers* on the grounds that outside legal work may interfere with the legal work they perform for the United States. Mott and other AUSAs are subject to 5 C.F.R. § 3801.106 solely by virtue of their official duties as counsel for the United States. As a result of this federal defense, Section 1442(a)(1) applies.

      The Second Judicial District Court also argues that an order to serve as an arbitrator is materially different than a subpoena to produce documents or testify because the latter is "adversarial." Second Judicial suggests that Mott's removal of the case was premature because she has not yet been sanctioned or found to be in contempt of Second Judicial's order appointing her as arbitrator. It is true that some courts have interpreted narrowly Section 1442's requirement that civil or criminal proceedings have been commenced against a federal officer before removal will be proper. For instance, in *Indiana v. Adams*, 892 F. Supp. 1101 (S.D. Ind. 1995), the court refused to allow removal on the basis of the issuance of a subpoena to compel discovery against FBI technicians. On the motion to remand, the district court held that although institution of a contempt action to compel discovery would constitute the commencement of a civil or criminal

proceeding against a federal officer within the meaning of the statute, issuance of a subpoena was a purely ministerial act under Indiana law, and as such did not entitle the officer to a federal forum. The court acknowledged that Congress intended an expansive reading of Section 1442, yet decided that the statute "… would be stretched well beyond its intent by an interpretation that an action had been 'commenced' against a federal officer before the state trial court had taken any substantive steps to coerce the federal official to comply with a subpoena or other discovery request." *See also Alabama v. Stephens*, 876 F. Supp. 263 (M.D. Ala. 1995) (remanding because no contempt proceedings had begun in state court and because it was uncertain whether the federal officer would refuse to testify in compliance with his employer's instructions).

      The Court is unconvinced by the reasoning of *Adams* and *Stephens*. A subpoena to testify or produce documents is simply a command from the court that the respondent must perform a particular act. The same is true of the order in this case directing Mott to serve as a court-annexed arbitrator. Second Judicial contends that it has the right to sanction a federal officer who, in compliance with federal law, refuses to serve as an arbitrator under the Local Rule. Similarly a federal officer who, in accordance with federal law, refuses to testify or produce evidence under state court subpoena may face contempt proceedings. In both instances, a state court is attempting to compel a federal officer to do something that federal law states he must not do. Both types of orders subject the federal officer to the choice between compliance with state law or federal law, but not both.

      For this reason, other district courts have found Section 1442 removal proper under the same circumstances, even when a dispute over a federal officer's obligation to testify or produce documents has not yet culminated in contempt proceedings. For example, in *Ferrell v. Yarberry*, 848 F. Supp. 121 (E.D. Ark. 1994), the court held that removal is proper when plaintiff seeks to

subpoena testimony of nonparty officials of the Department of Agriculture, reasoning that the risk that an officer might be held in contempt for not testifying is enough to qualify case for removal under federal officer statute. Similarly, in *People of California v. Reyes*, 816 F. Supp. 619, 622 (E.D. Cal. 1992), the district court concluded it had jurisdiction to hear a motion to quash subpoena issued by state court ordering federal officer to testify, even though state judge had not yet held the official in contempt, when it was clear from the record that the state court had every intention of doing so in absence of ruling from federal court that it lacked authority to do so and such contempt proceeding would be removable to federal court.

The Court agrees with the reasoning of *Ferrell*, *Reyes*, and similar cases. In *Nationwide Investors v. Miller*, 793 F.2d 1044, 1045 (9th Cir. 1986), the court explained that when a federal agent ignores a court order, be it a subpoena, summons or other directive, he does so under threat of a civil lawsuit or a contempt proceeding. *Id*. Eventually, if the officer continues to follow federal law, he will be sued by the party trying to enforce the state court order or he will be the target of a contempt proceeding. *Id*. at 1046.  At that point, the federal agent will be a defendant in a "civil action" under Section 1442(a)(1) and will be able to remove. *Id*. Requiring the federal officer to wait until that point to remove "is worse than an empty gesture, because it encourages the government to disobey state court process so that the government can obtain a federal forum." *Id*. at 1047. Thus, the Ninth Circuit held that a federal officer summoned in a state court garnishment proceeding under threat of fine or imprisonment could remove under Section 1442(a)(1) and was not required to wait to remove until after he had been found in contempt or fined. Similarly, the D.C. Circuit has recognized that "the courts have long interpreted [Section 1442(a)] to include matters, such as subpoenas, that are only incidents of civil and criminal actions, yet have the same interference effect" of actions brought directly against federal officers.

*Maddox v. Williams*, 855 F. Supp. 406, 409 (D.D.C. 1994). "Indeed, . . . the law is that a federal official need not wait for a contempt citation before removing his case to federal court." *Id*. at 410 n.12. The Fifth Circuit is in accord, holding that removal under Section 1442 prior to formal initiation of contempt proceedings is not premature if the federal officer refuses to comply with a subpoena based on federal law. *State of Louisiana v. Sparks*, 978 F.2d 226, 231-32 (5th Cir. 1992). "To require [a federal officer] run the risk of a contempt citation—not to mention fines or incarceration—simply because he complies with his federal duty would be imprudent and defeat the larger purpose of the federal officer protection removal statute." *Id*. at 232. *See also Brown & Williamson v. Williams*, 62 F.3d 408, 414-15 (D.C. Cir. 1995). By the same token, Mott was not obligated to wait until she was subject to sanctions or contempt proceedings prior to removing this case.

Mott removed this case based on a federal defense, and she was not required to wait until she had been sanctioned by Second Judicial. Accordingly, the Court holds that that removal of this case under 28 U.S.C. 1442(a)(1) was proper.

**II.      MOTION TO QUASH**

Having concluded that removal of the case was proper, the Court now must decide whether to quash the Second Judicial's order appointing Mott to act as arbitrator in the underlying collections case. Mott (and the Office of the U.S. Attorney at large) have refused to serve in the court-annexed arbitration program on the grounds that such service is prohibited by 5 C.F.R. § 3801.106.

"Supremacy Clause immunity governs the extent to which states may impose civil or criminal liability on federal officials for alleged violations of state law committed in the course of their federal duties." *Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006). In *Touhy v.*

*Ragen*, 340 U.S. 462 (1951), the Supreme Court found that an FBI agent had properly refused to produce federal government records subpoenaed by a state court. The agent's refusal was in accordance with a validly enacted Order of the U.S. Attorney General. *Id*. at 469. As a result, the Court concluded that the FBI agent could not be held in contempt of the state court order. *Id*. at 470. Many other courts have since concluded that a state court cannot compel a federal agent to testify or produce documents when there is a valid federal regulation prohibiting him from doing so. *See, e.g., Charges of Unprofessional Conduct Against 99-37 v. Stuart*, 249 F.3d 821 (8th Cir 2001); *Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998); *State of Louisiana v. Sparks*, 978 F.2d 226, 234-36 (5th Cir. 1992); *Nationwide Investors v. Miller*, 793 F.2d 1044 (9th Cir. 1986); *FBI v. Superior Ct. of Cal.*, 507 F. Supp.2d 1082, 1092-94 (N.D. Cal. 2007).

In this case, Second Judicial does not argue that the regulations preventing AUSAs from serving as arbitrators were not validly enacted. Instead, it argues that the regulations cited and relied on by both the U.S. Attorney's Office and the Executive Office of United States Attorneys' General Counsel's Office do not, in fact, preclude AUSAs from participating in the Second Judicial District Court's arbitration program. In other words, Second Judicial argues that the Department of Justice has misinterpreted and misapplied its own regulation. Again, the Court does not find this argument persuasive.

The DOJ regulation found at 5 C.F.R. § 3801.106(a) prohibits DOJ employees from engaging in "outside employment," which includes, *inter alia*, "services as a lawyer." Subsection (b)(1) of the same section states that "no employee may engage in outside employment that involves . . . (i) the practice of law, unless it is uncompensated and in the nature of community service, or unless it is on behalf of himself, his parents, spouse, or children." Finally, an

employee must obtain written approval before engaging in outside employment not otherwise prohibited by subsection (b)(1) that involves the practice of law.

Second Judicial argues that conducting an arbitration as outlined in its local rule LR2-603 is not the "practice of law" because arbitrators do not counsel clients or have confidential attorney-client communications with the participants. The Court believes that Second Judicial takes too narrow a view of the term "practice of law." Under the local rule, arbitrators are required to conduct hearings and trials, rule on motions, weigh evidence, and apply law to facts. To properly do these things, arbitrators must understand and apply many complex legal concepts, such as the rules of civil procedure, the rules of evidence, and the applicable substantive law governing the case. These things are at the heart of what lawyers do, which is underscored by the fact that in order to be a court-annexed arbitrator in Second Judicial District Court one must be a member of the bar. Thus, to act as an arbitrator in the manner described in Second Judicial's local rule is the practice of law.

Second Judicial also argues that even if it is the practice of law, acting as an arbitrator is subject to the exception in subsection (b)(1) of Section 3801.106 because it is uncompensated work. However, the local rule clearly states that arbitrators are entitled to compensation in the amount of $100 per case. Although this is a relatively minor sum and an arbitrator may decline to accept it, the Court cannot conclude that the work of an arbitrator is uncompensated. This exception does not apply.

Finally, Second Judicial argues in essence that the ethical rule is a rule of convenience. It points out that "the practice of law" is permitted as long as DOJ exercises its discretion to waive the restriction in writing. That waiver, argues Second Judicial, must be extremely easy to obtain given Siemel's offer to provide Second Judicial with a list of "volunteer" AUSA arbitrators in

exchange for Second Judicial's agreement to remove the remaining AUSAs from the pool of potential arbitrators. In other words, the regulatory barrier to an AUSA's service as an arbitrator is really no barrier at all, but rather is something that DOJ can overlook when it desires. However, the fact remains that DOJ has *not* waived the restrictions with respect to Mott and the other AUSAs in the District of New Mexico. The mere fact that the Department of Justice can waive the restrictions found in § 3801.106 upon request does not mean that it has waived them[1], or that it must waive them here. In the absence of a valid waiver, federal law trumps state law and sovereign immunity prevails. In light of the foregoing,

**IT IS HEREBY ORDERED** that the Respondents' *Motion to Quash Order Appointing AUSA Mott as State Court Arbitrator* [Doc. 5] is **GRANTED**, and the Order of the Second Judicial District Court appointing Linda Mott as arbitrator in *Asset Acceptance, LLC v. Jorge Delgado* is **QUASHED** on grounds of sovereign immunity.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Second Judicial District Court, Bernalillo County, New Mexico.

_____
**UNITED STATES DISTRICT JUDGE**

---

[1] Second Judicial has not argued explicitly that the federal government has waived its sovereign immunity on this issue.